UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-24994-BLOOM/Louis

ANIBAL GOMEZ,

     Plaintiff,

v.

ALLIED PROFESSIONALS
INSURANCE COMPANY,

     Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Allied Professionals Insurance Company's ("APIC") Motion to Compel Arbitration and Stay Proceedings, ECF No. [20] ("Motion"). Plaintiff filed a Response to the Motion, ECF No. [23] ("Response"), to which Defendant filed a Reply, ECF No. [26] ("Reply"). The Court has considered the Motion, the Response, the Reply, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

## I.     BACKGROUND

This matter stems from a lawsuit Plaintiff initiated in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Defendant on November 11, 2019, ECF No. [1-1]. Defendant removed the case to this Court on December 4, 2019, ECF No. [1], based upon diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

According to the Complaint, ECF No. [1-1], Defendant issued an insurance policy to its insured, Dr. Anthony Batillo ("Dr. Batillo"), "to cover and indemnify Dr. Batillo for professional liability for injuries arising out of the rendering of or the failure to render chiropractic services,"

with a policy limit of $1,000,000.00 per incident. *Id.* at ¶¶ 4-5. While the policy was in effect, Plaintiff underwent chiropractic treatment with Dr. Batillo and suffered a dissection of his right internal carotid artery, which caused him to suffer an ischemic stroke. *Id.* at ¶ 7. Plaintiff alleges that Defendant was timely notified of the negligence claim against Dr. Batillo and had sufficient information to timely tender the $1,000,000.00 policy limits. *Id.* at ¶ 8. He maintains that Defendant "knew or should have known" that the value of Plaintiff's claim, "if not settled promptly, presented a risk of certain financial exposure" "well in excess of the" policy limit. *Id.* at ¶ 10. He adds that he provided Defendant "with at least three opportunities" to settle the claim within the policy limits, *id.* at ¶ 11, but these demands were rejected or ignored. *Id.* at ¶¶ 12-13.

Plaintiff alleges that on November 14, 2018, he obtained a final judgment against Dr. Batillo for approximately $3.7 million. *Id.* at ¶ 14.[1] In his view, Defendant should have timely tendered the $1,000,000.00 policy limit to settle the underlying claim because "[d]oing so would have been proper pursuant to settled Florida bad faith law." *Id.* at ¶ 16. The Complaint alleges a single count for common law bad faith based on Defendant's alleged breach of its duties of good faith to Dr. Batillo, including its failure to settle Plaintiff's claim within policy limits "when it could have and should have done so." *See id.* at ¶¶ 18-24.[2]

Defendant now moves to compel arbitration to occur in California and to stay proceedings in the Southern District of Florida pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

---

[1] On March 25, 2020, the Court granted Plaintiff's unopposed motion for leave to amend paragraphs 23 and 24 of the Complaint by interlineation, ECF Nos. [21] and [22], to note that Plaintiff was also awarded $841,947.15 in attorney's fees and costs, plus statutory interest, against Dr. Batillo in the underlying action.

[2] Plaintiff states that after the final judgment was entered in the underlying lawsuit against Dr. Batillo, Defendant mailed Plaintiff's counsel a check for $500,000.00, but Plaintiff has not deposited these funds. *See* ECF No. [23] at 4.

("FAA"), and Section V.C of the subject insurance policy. *See* ECF No. [20]. Defendant argues that even though Plaintiff is not an insured under the policy and did not agree to the arbitration provision, Plaintiff is bound by it as a third-party beneficiary because his claims against Defendant "derive from the policy and APIC's obligations thereunder." *Id.* at 1. Specifically, Defendant represents that "[b]ut for the existence of the subject policy, [Plaintiff] would in fact have no claims against APIC as there is no other relationship between the two parties aside from the policy." *Id.* It adds that equitable estoppel principles apply to preclude Plaintiff from claiming benefits of the policy on the one hand while simultaneously attempting to avoid the burdens that the policy impose on the other hand. *See id.* at 2. In this respect, Defendant argues that Plaintiff is Dr. Batillo's "privy" and stands in his shoes for purposes of bringing this bad faith claim even though Plaintiff did not receive an assignment from him. *Id.* at 13-15.

In the Response, Plaintiff asserts that Defendant waived arbitration based on its alleged noncompliance with the notice requirement contained in the policy's arbitration provision. ECF No. [23] at 2. In particular, he contends that the arbitration provision is ambiguous in light of the policy's notice provision and that regardless of the ambiguity, Defendant did not timely notify Plaintiff that it would require the bad faith dispute be submitted to arbitration. *See id.* at 7. He further maintains that the arbitration clause does not apply to him because there was no assignment of the bad faith claim from Dr. Batillo. Instead, he maintains that the arbitration clause only applies to parties to the contract and not third-party beneficiaries. *See id.* at 2. He adds that subsequent to when the policy was in effect, Defendant has materially changed its arbitration provision to now include third-party beneficiaries to be specifically within the provision's scope. *See id.* at 9-10.

In the Reply, Defendant characterizes the Response as "meritless." ECF No. [26] at 2. It argues that it has not waived its right to arbitration under the FAA's two-part test. Specifically,

Defendant maintains that it has never acted inconsistently with its arbitration right and that Plaintiff has not been prejudiced by any action taken by APIC that is otherwise inconsistent with its right to arbitrate. *See id.* at 2-7. Defendant asserts that it discussed arbitration with Plaintiff the day after the lawsuit was filed, *id.* at 4-5, and that it demanded arbitration as its first affirmative defense, which pleading was filed two days after the lawsuit was removed to this Court. *Id.* at 5. Defendant adds that the policy's notice provision is inapplicable to the instant dispute, and that no ambiguity exists in the arbitration provision. *Id.* at 7-10. Defendant further contends that the bad faith claim falls within the arbitration's scope, and that Plaintiff's invocation of Defendant's revised arbitration provision issued "years after" to a "different APIC insured" is "irrelevant to these proceedings" and the governing policy. *Id.* at 10-12.

The Motion, accordingly, is ripe for consideration.

## II.    LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the FAA, 9 U.S.C. § 1 *et seq.*, "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of*

*Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014) (quoting *Mitsubishi Motors*, 473 U.S. at 625-26); *Hemispherx*, 553 F.3d at 1366 ("The role of the courts is to rigorously enforce agreements to arbitrate.") (internal citation and quotation omitted). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citing *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). "Federal law counsels that questions of arbitrability, when in doubt, should be resolved in favor of arbitration." *Id.* (citing *Moses H. Cone Mem'l Hospital*, 460 U.S. at 24). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014); *see Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (directing courts to "apply [ ] the presumption of arbitrability only" to "a validly formed and enforceable arbitration agreement"). Therefore, "parties cannot be forced to submit to arbitration if they have not agreed to do so." *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008).

When presented with a motion to compel arbitration, a district court will consider three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011); *see also Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envt'l.*

*Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived."). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original). Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration. *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."). Through this lens, the Court considers the instant Motion.

## III.   DISCUSSION

Deciding whether Defendant is entitled to relief under the Motion raises four overarching issues. First, whether Plaintiff is bound by the insurance policy's arbitration provision even though he is not a party to the contract. Second, whether the arbitration provision is valid. Third, whether an arbitrable issue exists. And finally, whether Defendant has waived the right to arbitrate. Regarding the first issue, if it is determined that Plaintiff is not bound by the policy's arbitration provision, then the Court cannot compel arbitration and it need not address the latter issues.

### A.      Plaintiff is bound by the policy's arbitration provision

Section V.C of the subject policy provides as follows:

> **C.      Arbitration**.   If a dispute or claim shall arise with respect to any of the terms or provisions of this Policy, or with respect to the performance by any of the parties to the policy, then any party or that party's authorized representative may, by notice as herein provided, require that the dispute be submitted within fifteen (15) days to an arbitrator in good standing with the American Arbitration Association under the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any arbitration undertaken pursuant to the terms of this section shall be governed by the Federal Arbitration Act and shall occur in Orange County, California.

*Id.* Plaintiff correctly points out that he is not a formal party to the contract and did not agree to its terms. *See* ECF No. [23]. He also emphasizes that he did not receive an assignment from Dr. Batillo of the bad faith claim,[3] the arbitration provision unambiguously applies only to "any party or that party's authorized representative," and that the provision has been subsequently amended in later policies to expressly include third-party beneficiaries. *See id.* at 9-12. According to Plaintiff, these features prevent him from being bound by the arbitration provision. The Court finds Plaintiff's arguments unconvincing.

It is true that Plaintiff does not fall within the express language of the arbitration provision, which applies only to a "party or that party's authorized representative." *See Abel Homes at Naranja Villas, LLC v. Hernandez*, 960 So. 2d 891, 894 (Fla. 3d DCA 2007) (stating that "[w]here

---

[3] A judgment creditor, such as Plaintiff, may maintain suit directly against the tortfeasor's liability insurer for recovery of the judgment in excess of policy limits, without an assignment from the tortfeasor, based on the insurer's bad faith conduct or claims handling, *see Thompson v. Commercial Union Ins. Co. of N.Y.*, 250 So. 2d 259 (Fla. 1971). That holding was premised in part on the principle that "a third party beneficiary who is not a formal party to a contract may sue for damages sustained as a result of the acts of one of the parties to the contract." *Id.* at 261. However, "[t]his rule [authorizing direct suit against the insurer] has been limited so that claimants may only bring a bad-faith action if the insured would be able to bring the action against its insurer[.]" *Maldonado v. First Liberty Ins. Corp.*, 342 F. App'x 485, 487 (11th Cir. 2009) (citing *Fidelity and Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459, 461 (Fla. 1985).

contractual provisions are clear and unambiguous, the court must give those terms their plain and ordinary meaning" and recognizing that "all doubts concerning the scope or waiver of the right to arbitrate under contracts are to be resolved in favor of arbitration" but "where the contract provision is not doubtful, arbitration should not be ordered") (citations omitted). However, Florida law recognizes that a "non-signatory may be bound to arbitrate under certain circumstances: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel." *Allied Prof's Ins. Co. v. Fitzpatrick*, 169 So. 3d 138, 142 (Fla. 4th DCA 2015). Accordingly, the fact that the arbitration provision does not mention Plaintiff is not dispositive. In this instance, Defendant argues that Plaintiff is bound to the policy and should be compelled to arbitrate under equitable estoppel and agency-like theories. *See* ECF No. [20] at 15-21.

In *Fitzpatrick*, plaintiffs brought suit against a chiropractor and the chiropractor's employer for negligent care of a patient. *Id.* at 140. The chiropractor's insurer, objecting to joinder, argued that the plaintiffs, by claiming rights under the policy against the insurer, became bound by the policy's arbitration provision. *Id.* at 140-41. The insurer then moved to compel arbitration of the claims at issue pursuant to the policy's arbitration provision.[4] Plaintiffs opposed the motion to

---

[4] The Court notes that the provision in *Fitzpatrick* was more extensive than the arbitration clause here, and provided that "[a]ll disputes or claims involving the [insurer] shall be resolved by binding arbitration, whether such dispute or claim arises between the parties to this Policy, or between the [insurer] and any person or entity who is not a party to the Policy but is claiming rights either under the Policy or against the [insurer]. *See id.* at 139-40. However, the *Fitzpatrick* court's relevant analysis regarding equitable estoppel did not focus on the scope of this language. *See id.* at 141-42. Further, that Defendant subsequently issued a policy years later to different insureds containing an amended arbitration clause does not mean that arbitration is unavailable under the instant policy. The language change, moreover, is immaterial to the instant dispute. *See Moss v. State Farm Fire & Cas. Co.*, No. 7:08-CV-33 (WLS), 2010 WL 11530530, at *1 (M.D. Ga. Aug. 2, 2010) (granting insurer's motion *in limine* excluding discussion of the carrier's changes to its homeowner's policies regarding coverage of mold claims as "irrelevant" to the plaintiff's bad faith claim, which "revolves around Defendant's alleged frivolous and unfounded refusal to pay Defendant's insurance claim").

compel on the basis that because they were not named in the policy nor signatories to the policy, they could not be compelled to arbitrate. *Id.* at 141-42. On appeal, the court rejected their arguments and concluded that estoppel applied to bind plaintiffs to arbitration. Specifically, the court noted broadly that "plaintiffs cannot claim they are entitled to the benefit of the policy's coverage provision while simultaneously attempting to avoid the burden of the policy's arbitration provision. . . . In the arbitration context, . . . a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when [the party] has consistently maintained that other provisions of the same contract should be enforced to benefit [the party]." *Id.* at 142 (citation omitted). *See also Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1326-27 (11th Cir. 2018) (noting that under the FAA "parties can compel arbitration through estoppel under Chapter 1 of the FAA . . . because Chapter 1 does not expressly restrict arbitration to the specific parties to an agreement").

In the Complaint, Plaintiff claims that he is a "beneficiary of the APIC Policy," *see* ECF No. [1-1] at ¶ 6, and he sues Defendant for breaching numerous duties owed to Dr. Batillo, *see id.* at ¶¶ 19, 22. He asserts that as a result of the breaches, he is entitled to a final judgment, which amount includes the policy limits. *See id.* at ¶¶ 14, 23-24. Moreover, in the Response, Plaintiff characterizes himself as a "direct third-party beneficiary" and an "intended third-party beneficiary," and he concedes that he is a third-party beneficiary to the insurance policy. *See* ECF No. [23] at 2, 9, 10. He also agrees that the principle that "[i]t is well-settled law that parties cannot claim the benefits of a particular agreement while simultaneously attempting to avoid the burdens imposed by a different provision of the same agreement" applies "with equal force" to him, *id.* at 8, and that Defendant is "correct that the weight of authority supports its contention that a third-party beneficiary of an insurance policy can be bound by the contract between the insurer and the

insured." *Id.* at 9.

Florida courts routinely hold that third-party beneficiaries are bound by arbitration provisions. *See, e.g.*, *Pulte Home Corp. v. Bay At Cypress Creek Homeowners' Ass'n, Inc.*, 118 So. 3d 957, 958 (Fla. 2d DCA 2013) ("[A]s a basic derivative of the principle that a third-party beneficiary steps into the shoes of a contracting party and is subject to all provisions of contract, a third-party beneficiary of a contract containing an arbitration provision can be compelled to arbitrate.") (citation omitted); *Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.*, 778 So. 2d 1089, 1090 (Fla. 4th DCA 2001) (explaining that "[n]on-signatories may be bound by an arbitration agreement if dictated by ordinary principles of contract law and agency" and that "a third party beneficiary to a contract can be compelled to arbitrate"); *Terminix Int'l Co., LP v. Ponzio*, 693 So. 2d 104, 109 (Fla. 5th DCA 1997) (holding that non-signatory third-party beneficiaries were bound by contract's arbitration provision); *Orion Ins. Co. v. Magnetic Imaging Sys. I*, 696 So. 2d 475, 478 (Fla. 3d DCA 1997) ("Arbitration clauses in contracts are binding on third-party beneficiaries. As a third-party beneficiary, Magnetic is bound by the arbitration provision in the insurance policy.") (internal citations omitted); *Zac Smith & Co. v. Moonspinner Condo. Ass'n*, 472 So. 2d 1324 (Fla. 1st DCA 1985) ("[T]he issue presented is whether an arbitration clause in a contract is binding on a third-party beneficiary. We hold that it is. A third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and the promisee. 'Where the contract contains an arbitration clause which is legally enforceable, the general view is that the beneficiary is bound thereby to the same extent that the promisee is bound.'") (internal citation omitted).

In *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295 (11th Cir. 2014), which involved compelling arbitration of an insurance dispute under the instant arbitration clause, the Eleventh

Circuit observed that "Florida courts have exhibited a willingness to compel a number of different nonsignatories to arbitrate," including third-party beneficiaries and non-assignees. *See id.* at 1302-03. In particular, a "nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract." *Id.* at 1302 (citation omitted).

Here, Plaintiff seeks indemnity benefits provided by Dr. Batillo's policy and payment of the outstanding judgment. By seeking such benefits arising from the policy's provisions, Plaintiff is estopped from avoiding the burdens of the same policy. Further, the Court notes that Plaintiff's bad faith claim is "not separate and distinct from" but is "derivative of" a potential claim Dr. Batillo could bring based on the policy. *See Cope*, 462 So. 2d at 461 (holding that because excess judgment against insured was satisfied before the bad faith lawsuit was filed, the insured no longer had a cause of action against the insurer and therefore neither did the third-party claimant). Florida courts have subjected non-signatory plaintiffs to arbitration where the underlying action was "derivative" of a wrong committed upon a signator to an arbitration provision. *See Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 762 (Fla. 2013) ("[W]e ultimately conclude that the nature of a wrongful death cause of action in Florida is derivative in the context of determining whether a decedent's estate and heirs are bound by the decedent's agreement to arbitrate. The estate and heirs stand in the shoes of the decedent . . . [and] are bound by the arbitration agreement to the same extent that [the decedent] would have been bound.").

As noted, Plaintiff acknowledges that he is a third-party beneficiary under the policy. *See Raffa Assocs., Inc. v. Boca Raton Resort & Club*, 616 So. 2d 1096, 1097 (Fla. 4th DCA 1993) (noting that "[f]or purposes of argument, we accept appellant Raffa's proffered legal position as to the status of the architect appellee and the facial consequences of that status; that is, the architect

was a third-party beneficiary of the construction contract. Having accepted that status, we note that ordinarily a third-party beneficiary of a contract is bound by an arbitration clause in that contract") (citing *Zac Smith & Co.*, 472 So. 2d at 1325 (citing 2 Williston on Contracts, § 364A (3d ed. 1959))). As Florida law authorizes compelling non-signatories to arbitrate under both equitable estoppel and third-party beneficiary theories, the Court concludes that Plaintiff can be bound by the arbitration provision at issue.[5] Accordingly, the Court will proceed to analyze the remaining issues.

## B.     The arbitration provision is valid

Plaintiff does not argue that the arbitration provision is invalid or that it is unenforceable.[6] Instead, he argues that the provision contains an ambiguity based on the notice requirement included within the clause and that Defendant waived its right to arbitrate because it did not comply with the notice term. *See* ECF No. [23] at 2, 5-8. The Court will separately analyze waiver, but presently address whether the arbitration provision is ambiguous as Plaintiff represents. Upon review, the Court does not find that the provision is ambiguous in the instant case. It further

---

[5] The Court notes that Plaintiff tiptoes around the general rule that any doubts regarding the right to arbitrate be resolved in favor of arbitration. On the one hand, he requests that the Court view the arbitration provision as unambiguous regarding the scope of individuals bound by the arbitration requirement—"any party or that party's authorized representative." ECF No. [23] at 9-11. However, on the other hand, he contends that the arbitration provision is ambiguous as to the notice requirement and, therefore, requests that it be construed against Defendant. *See id.* at 6-8. Plaintiff cannot have it both ways by claiming the provision ambiguous when it suits one argument yet unambiguous when it favors a different argument.

[6] "Because 'arbitration is a matter of contract . . . the interpretation of an arbitration agreement is generally a matter of state law.' Under Florida law, 'in order to invalidate an arbitration clause, the court must find that it is both procedurally and substantively unconscionable.'" *Curbelo v. Autonation Ben. Co.*, No. 14-CIV-62736, 2015 WL 667655, at *3 (S.D. Fla. Feb. 17, 2015) (internal citations omitted). Plaintiff offers no arguments that the arbitration provision is either procedurally or substantively unconscionable.

concludes that the arbitration provision is valid and enforceable.

As noted, the arbitration provision provides that "[i]f a dispute or claim shall arise with respect to any of the terms or provisions of this Policy, or with respect to the performance by any of the parties to the policy, then any party or that party's authorized representative may, by notice as herein provided, require that the dispute be submitted within fifteen (15) days to an arbitrator in good standing with the American Arbitration Association[.]" *See* ECF No. [20-1] at Section V.C. The policy contains a notice provision in Section IV.B that states the following:

> **B.**  **Notice of Claim or Suit.**  If a claim or suit is reported against the Named Insured based on an incident covered by this Policy, the Named Insured shall, within three (3) business days, by certified mail return receipt requested forward to the Company every demand, notice, summons, or other process received by him or her or by his or her representative. Failure to give such notice, including but not limited to failure to give notice of a claim or action until after the Named Insured has submitted to the jurisdiction of a court or until after judgment, shall constitute a material breach of the Policy resulting in total loss of coverage for such claim or action and shall constitute substantial and actual prejudice which adversely affects the rights of the Company, which bases its Policy and premiums on cost-containment methods of dispute resolution, mandatory arbitration, and settlement.

*Id.* According to Plaintiff, when the arbitration clause and the notice clause are read together, three potential interpretations arise for Defendant's notice obligations as to seeking arbitration. *See* ECF No. [23] at 6-7. Plaintiff, thus, posits that the "ambiguous contractual notice requirement is construed against [Defendant]," and that while ambiguous arbitration provisions are construed in favor of arbitration, that "contention is irrelevant" because the notice requirement is ambiguous, not the arbitration provision. *Id.* The Court finds Plaintiff's argument to be lacking.

First, the distinction between the alleged ambiguity pertaining only to the notice aspect versus the arbitration component is artificial. If the notice clause truly contained an ambiguity, it would also render the arbitration clause ambiguous given that the arbitration clause would be based on the notice clause. In such a setting, any doubts are resolved in favor of arbitration. *See Moses*

*H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

Second, and more importantly, the contractual notice provision does not apply to the facts at hand based on its plain language. Specifically, the notice provision is triggered only "[i]f a claim or suit is reported against the Named Insured[.]" *See* Section IV.B. Here, that circumstance is inapplicable because Plaintiff himself directly brings a lawsuit against Defendant, not against Dr. Batillo, for bad faith. Further, the notice clause requires the named insured, not the insurer, to provide notice of the suit, and it provides that a failure to give notice constitutes a breach of the policy by the insured, not the insurer. *See id.* As such, there is no suit for Dr. Batillo to report to Defendant, which is the only type of "notice" included within that policy provision. Accordingly, the arbitration provision's bare reference to "notice as herein provided" does not compel the conclusion that the facially inapplicable notice provision in Section IV.B governs the notice requirement for arbitration purposes.

Generally, courts will strive to interpret an insurance policy based on the definitions contained within the policy, but "if the definition provided in one section of the policy is not applicable to the coverage at issue in another section, courts may be compelled to search elsewhere for a sensible and appropriate definition." *Grant v. State Farm Fire & Cas. Co.*, 638 So. 2d 936, 937 (Fla. 1994) (determining that definition used in one section of automobile policy "is not relevant to the exclusions discussion" in a different section of the policy, and therefore looking to Florida statutes for guidance in defining term). Moreover, "[w]hen a term in an insurance policy is undefined, it should be given its plain and ordinary meaning, and courts may look to legal and

non-legal dictionary definitions to determine such a meaning." *Gov't Employees Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) (citation omitted). *See also id.* ("[T]he lack of a definition for an operative term 'does not, by itself, create an ambiguity'") (citation omitted); *Miglino v. Universal Prop. & Cas. Ins. Co.*, 174 So. 3d 479, 481 (Fla. 4th DCA 2015) (examining Black's Law Dictionary definitions and noting that the "lack of a definition of a term in a policy does not render it ambiguous or in need of interpretation by the courts, but rather such 'terms must be given their every day meaning and should be read with regards to ordinary people's skill and experience.' 'Florida courts will often use legal and non-legal dictionaries to ascertain the plain meaning of words that appear in insurance policies.") (internal citations omitted).

To the extent "notice" within the arbitration provision needs to be defined, the Court finds Black's Law Dictionary definitions instructive. *See, e.g.*, NOTICE, Black's Law Dictionary (11th ed. 2019) ("Legal notification required by law or agreement, or imparted by operation of law as a result of some fact (such as the recording of an instrument); definite legal cognizance, actual or constructive, of an existing right or title <under the lease, the tenant must give the landlord written notice 30 days before vacating the premises>."); (defining "due notice" as "[s]ufficient and proper notice that is intended to and likely to reach a particular person or the public; notice that is legally adequate given the particular circumstance"); (defining "fair notice" as "[s]ufficient notice apprising a litigant of the opposing party's claim"); (defining "reasonable notice" as "[n]otice that is fairly to be expected or required under the particular circumstances").

The Court also notes that the Florida Arbitration Code similarly does not define "notice" under a bright-line measure. *See* Fla. Stat. § 682.012(1) (stating that "[e]xcept as otherwise provided in this chapter, a person gives notice to another person by taking action that is reasonably necessary to inform the other person in ordinary course, whether or not the other person acquires

knowledge of the notice."); *see also id.* at § 682.032(1) ("A person initiates an arbitration proceeding by giving notice in a record to the other parties to the agreement to arbitrate in the agreed manner between the parties or, in the absence of agreement, by certified or registered mail, return receipt requested and obtained, or by service as authorized for the commencement of a civil action. The notice must describe the nature of the controversy and the remedy sought.").

Based on the above rules of construction and relevant definitions, the Court concludes that the arbitration provision is valid and that it is not ambiguous. In this respect, the Court determines that a fixed deadline for giving "notice" does not apply to demanding arbitration under the policy. Rather, a reasonable time for providing notice applies under which the dispute is to be submitted to arbitration within 15 days of the demand.

### C. An arbitrable issue exists

Plaintiff appears to argue that an arbitrable issue does not exist under the arbitration clause because California courts do not recognize third-party bad faith insurance claims. *See* ECF No. [23] at 1. The Court fails to see how that contention bears on this matter. The Complaint asserts a Florida common law third-party bad faith claim against Defendant. Plaintiff cites no authority for the implied proposition that an arbitrator in California cannot hear claims arising under Florida law. Nor does he identify any authority for the related proposition that an arbitrator in California cannot hear claims under another state's law that are not recognized under California law.

The arbitration provision, moreover, broadly states that it applies to a dispute or claim "with respect to any of the terms or provisions of this Policy, or with respect to the performance by any of the parties to the Policy[.]" *See* Section V.C. And it explicitly directs that arbitration will occur in California. Plaintiff, thus, fails to show how the instant dispute, which arises from Defendant's alleged breach of duties owed to Dr. Batillo under the policy, falls outside the ambit

of that provision. The Court further recognizes that other courts have approved arbitrating Florida-based insurance disputes in California under this arbitration clause. *See Kong*, 750 F.3d at 1298.

"Faced with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid or the issue otherwise non-arbitrable." *Curbelo*, 2015 WL 667655, at *2 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). Plaintiff has not met his burden on this point and the Court finds that an arbitrable issue exists.

### D.     Defendant did not waive the right to arbitrate

The Eleventh Circuit has determined that under the FAA, a two-part test is used to establish a waiver of a right to demand arbitration. "First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (internal quotation marks omitted). A party acts inconsistently with the arbitration right when the party "substantially invokes the litigation machinery prior to demanding arbitration." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). "[S]econd, we look to see whether, by [acting inconsistently with the arbitration right], that party has in some way prejudiced the other party." *Ivax Corp.*, 286 F.3d at 1316. To determine whether the other party has been prejudiced, "[the court] may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *S & H Contractors*, 906 F.2d at 1514. "Prejudice exists when the party opposing arbitration undergoes the types of litigation expenses that arbitration was designed to alleviate." *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (internal quotations omitted). Whether a party waived its right to arbitration is controlled solely by federal law. *See S & H Contractors*, 906 F.2d at 1514; *Pierre-Louis v. CC Sols., LLC*, No. 17-CV-60781,

2017 WL 4841428, at *2 (S.D. Fla. Oct. 26, 2017). Moreover, "[b]ecause federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof.'" *Stone v. E.F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990).

Plaintiff argues that Defendant has waived its right to arbitration based on its alleged non-compliance with the arbitration clause's notice requirement. In support, Plaintiff maintains that he provided Defendant with pre-suit correspondence on November 5, 2019, notifying Defendant of his intention to bring a bad faith lawsuit, *see* ECF No. [23-1], and that Defendant was served on November 20, 2019. *See* ECF No. [23] at 7. Yet, according to Plaintiff, Defendant did not demand arbitration until January 8, 2020. *See id.* Based on these dates,[7] Plaintiff contends that Defendant made an untimely demand for arbitration and that it, therefore, cannot now rely on the arbitration clause. *See id.* at 8 ("APIC's delay in providing notice of its intent to arbitrate violated the terms of its policy, and, therefore, waived its right to require arbitration of Plaintiff's claim."). The Court does not agree.

First, the demand for arbitration and subsequent motion to compel were made within timelines that comport with the FAA. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default."). Moreover, this Court has found that a defendant did not waive its right to arbitrate even after it had filed its answer, had served plaintiff with initial disclosures, and moved to compel arbitration nearly four months after suit was filed. *See Pierre-Louis*, 2017

---

[7] Defendant stresses in the Reply that it first discussed Plaintiff's participation in arbitration on November 12, 2019, and that it demanded arbitration as its first affirmative defense, which was filed on December 6, 2019. *See* ECF No. [26] at 4-5.

WL 4841428; *see also Asia Mar. Pac. Chartering Ltd. v. A. Cayume Hakh & Sons*, No. 19-CV-24919, 2020 WL 1244916, at *3 (S.D. Fla. Mar. 16, 2020) (finding that defendant did not waive its right to arbitrate where it sought arbitration more than two months after filing its answer); *Stone*, 898 F.2d at 1544 (party asserting arbitration agreement one year and eight months into litigation waived the right to arbitrate due to delay). Under the facts at hand, the Court does not find that Defendant's timing in moving to compel arbitration on March 17, 2020 is inconsistent with the arbitration right under the policy.

But even if Defendant was untimely in providing notice to Plaintiff, Plaintiff fails to allege, let alone demonstrate, that he has suffered any prejudice as a result of Defendant's actions. The Court evaluates the prejudice prong by "consider[ing] the length of delay in demanding arbitration and the expense incurred by [the] party [alleging prejudice] from participating in the litigation process." *Citibank, N.A. v. Stok & Assocs., P.A.*, 387 F. App'x 921, 924 (11th Cir. 2010). Similarly, the Court "might also consider the extent of '[t]he use of pre-trial discovery procedures by a party seeking arbitration,' to determine if the inconsistent conduct 'sufficiently prejudice[d] the legal position of an opposing party so as to constitute a waiver of the party's right to arbitration." *Id.*

Here, the record reflects that since the case was removed, Plaintiff has filed a corporate disclosure statement, ECF No. [8], a joint notice of mediator selection, ECF No. [17], a notice of service of proposal for settlement, ECF No. [19], a motion to amend the Complaint by interlineation, ECF No. [21], and the Response, ECF No. [23]. Defendant has filed his answer and affirmative defenses, ECF No. [6], a corporate disclosure statement, ECF No. [9], a joint scheduling report, ECF No. [10], the Motion, ECF No. [20], an unopposed motion for extension of time, ECF No. [24], the Reply, ECF No. [26], and served its initial disclosures, ECF Nos. [13] – [16]. This record does not demonstrate prejudice to Plaintiff even assuming there had been a

delay in timely providing notice. *See Pierre-Louis*, 2017 WL 4841428, at *3 (finding that defendant did not waive its right to arbitrate even where there was "some prejudice by the minor delay" in asserting the arbitration demand caused by having to "comply with certain court deadlines and incur[ing] attorneys' fees in so doing"); *Citibank, N.A.*, 387 F. App'x at 925 (noting that while non-movant "may have suffered some prejudice when it expended time and resources preparing and filing an offer of judgment, reply, and notice of readiness for trial in state court . . . courts have declined to find waiver in cases with similar or more extensive litigation activity").

Therefore, because the record does not demonstrate that Defendant has acted inconsistently with the arbitration right nor that Plaintiff has been prejudiced by Defendant, the Court concludes that Defendant did not waive its right to arbitrate this dispute. *See Ivax Corp.*, 286 F.3d at 1315-16.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [20]**, is **GRANTED**;

2. The parties shall **SUBMIT** to arbitration all claims asserted in this matter in accordance with the arbitration provision in the underlying insurance policy, ECF No. [20-1];

3. The matter is **STAYED** pending resolution of arbitration and is therefore administratively **CLOSED**;

4. The Clerk of Court is directed to **CLOSE** this matter for administrative purposes. After arbitration has concluded, either party may seek to reopen the case;

5. All pending motions are **DENIED AS MOOT**, and any pending deadlines are **TERMINATED**.

Case No. 19-cv-24994-BLOOM/Louis

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 6, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

21