# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No.  1:19-cv-24994-BB

| | |
|---|---|
| ANIBAL GOMEZ, | **DEFENDANT ALLIED PROFESSIONALS INSURANCE COMPANY'S MOTION TO CONFIRM ARBITRATION AWARD AND FOR ENTRY OF JUDGMENT** |
| Plaintiff, | |
| vs. | |
| ALLIED PROFESSIONALS INSURANCE COMPANY, A RISK RETENTION GROUP, INC., an Arizona corporation, | |
| Defendant. | |

**COMES NOW** Defendant Allied Professionals Insurance Company, A Risk Retention Group, Inc. ("Allied") and, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., hereby applies and petitions this Court to confirm the unanimous Final Arbitration Award ("Award")[1] issued by Arbitrators Justice Stephen J, Kane (Ret.), Hon. Christopher Skelly and Eric Dobberstein on November 18, 2021 and to enter judgment in accordance therewith in favor of Allied and against Plaintiff Anibal Gomez ("Gomez"). The grounds supporting this motion are set forth below.

---

[1] Attached hereto as Exhibit "A" and incorporated herein by this reference is a true and correct copy of the Award.

## I.    INTRODUCTION AND PROCEDURAL POSTURE.

1.    This is a petition to confirm an arbitration award and it is brought pursuant to 9 U.S.C. § 9.

2.    Allied is incorporated in the State of Arizona with its principal place of business in Orange County, California.

3.    Gomez is a citizen of the State of Florida and a resident of Miami-Dade County.

4.    The Court has previously exercised jurisdiction and continues to have jurisdiction over the parties and this proceeding under 28 U.S.C. Section 1332 based on diversity of all the parties, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5.    Venue for this proceeding is proper in this Court pursuant to 9 U.S.C. Section 9, 28 U.S.C. Sections 1391(a)(2), 1391(a)(3) and 1391(c).

6.    Gomez is a former patient of Dr. Anthony Battillo. Dr. Battillo is a Florida licensed chiropractor previously insured by Allied.

7.    On or about August 17, 2010, Gomez commenced a malpractice action against Dr. Battillo in Florida state court alleging negligence and resulting injury (the "Florida Action").

8.    Allied defended Dr. Battillo in the Florida Action under a claims made professional liability policy (the "Policy").[2]

9.    Ultimately, Gomez obtained a judgment against Dr. Battillo in excess of the Policy's limits.

10.    GOMEZ, then sued Allied in state court in Miami-Dade County, Florida for a single count for common law bad faith alleging that Allied breached its duties of

---

[2] Attached hereto as Exhibit "B" and incorporated herein by this reference, is a true and correct copy of the Policy.

2

good faith to Dr. Battillo, including its failure to settle Gomez's claims within policy limits when it could have and should have done so.

11.    On or about December 4, 2019, Allied removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. Sections 1332, 1441 and 1446.

12.    On March 17, 2020, pursuant to the Federal Arbitration Act, Allied filed a Motion to Compel Arbitration and Stay Proceedings ("Motion to Compel") requesting that the Court compel arbitration pursuant to the terms and conditions of the Policy and to stay these proceedings. (Dkt.20)

13.    Section V, Paragraph C of the Policy provides:

> **C. Arbitration.** If a dispute or claim shall arise with respect to any of the terms or provisions of this Policy, or with respect to the performance by any of the parties to the Policy, then any party or that party's authorized representative may, by notice as herein provided, require that the dispute be submitted within fifteen (15) days to an arbitrator in good standing with the American Arbitration Association under the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any arbitration undertaken pursuant to the terms of this section shall be governed by the Federal Arbitration Act and shall occur in Orange County, California.

Policy, at § V.C (bold original).

14.    On May 6, 2020, this Court entered an order granting the Motion to Compel directing the parties to submit to arbitration all claims asserted in this matter. (Dkt.27) The Court also stayed this matter pending resolution of the arbitration and ordered this matter administratively closed. (*Id.*)

15.    In accordance with the Court's ruling, the parties commenced arbitration of the above-described dispute for bad faith before the American Arbitration Association ("AAA") Case No.: 01-20-0005-4247.

16.   The selected arbitration panel consisted of Justice Stephen J. Kane (Ret.), as the Chair, the Honorable Christopher Skelly and attorney Eric Dobberstein.

17.   At a scheduling conference held on June 25, 2021, counsel for all parties jointly requested and the arbitration panel ("Panel") ordered a briefing schedule for the parties to serve cross-motions on the issue of choice of law.

18.   Thereafter, on September 7, 2021, having considered the parties' briefs along with oral argument that was heard on September 3, 2021, the Panel determined the arbitration proceeding would be governed by the laws of the State of California.[3]

19.   On November 8, 2021, Allied filed a dispositive motion for summary judgment against Gomez in the arbitration proceedings.

20.   Two days later on November 10, 2021, Gomez moved this Court to Reopen the instant matter, or in the alternative determine that Florida law controls the parties' arbitration. (Dkt.31)

21.   Thereafter, on November 18, 2021, the Panel issued its Order granting Allied's dispositive Motion for Summary Judgment, explaining that "California law holds that there is no private cause of action for a third-party, common law bad faith claim against an insurance company for its failure to settle a claim within the policy limits." (Exhibit "A" at 2)  The panel concluded that "[s]ince there was no contractual relationship between [Gomez] and [Allied], under California law, [Gomez] may not bring a tort action against [Allied] based on its handling of the claim against its insured, Dr. Battillo." (*Id*.)

22.   Importantly, in entering its final Award against Gomez, the Panel noted, that Gomez served a response to the Motion for Summary Judgment, **stating that it "'does not oppose entry of a Final Award in [Allied's] favor,**' but does oppose [Allied's] request to pay its one-half of the AAA fees and expenses and

---

[3] Attached hereto as Exhibit "C" and incorporated herein by this reference is a true and correct copy of the Panel's unanimous choice of law ruling.

Arbitrators' compensation incurred by [Allied]." (Emphasis added.) Exhibit "A" at 2.

23.     Finally, on January 27, 2022, this Court entered its *Omnibus Order On Plaintiff's Motion To Reopen And Defendant's Motion For Sanctions* (Dkt.46) wherein, among other things, it denied Gomez's motion to reopen the case or determine choice of law. The Court noted,

> Upon review of the record and consideration of the parties' briefings, the Court agrees with Defendant (Allied) that Plaintiff's Motion to Reopen is tantamount to a motion to vacate the arbitration panel's determination that California law applies to Plaintiff's common law bad faith claim and subsequent grant of summary judgment in Defendant's favor.  A motion to vacate, however, is not a mechanism to appeal or otherwise challenge the merits of a dispute conclusively determined in arbitration. Indeed, Congress carefully circumscribed the narrow and exclusive grounds for vacatur to prevent arbitration from becoming "merely a prelude to a more cumbersome and time-consuming judicial review process." (Footnote and citations omitted.) Thus, on a motion to vacate an arbitration award under 9 U.S.C. § 10(a), a district court "may revisit neither the legal merits of the award nor the factual determinations upon which it relies." (Citations)

> Here, Plaintiff has failed to present any evidence or legal argument that the arbitration panel's choice of law decision and subsequent award in Defendant's favor must be vacated. Indeed, upon review of the parties' submissions, it is apparent to the Court that the parties provided the arbitration panel with extensive briefing on the choice of law issue and presented their respective positions at oral argument. ECF No. [31-2]; ECF No. [36-2]; ECF No. [36-3]; *see also* ECF No. [36-1]. The arbitration panel then issued a detailed ruling explaining its determination as to why California law governs the arbitration proceedings. ECF No. [31-1]. While Plaintiff may not agree with the arbitration panel's determination and ultimate grant of summary judgment in Defendant's favor, that is not a sufficient basis for vacatur.[6] (Citations and omitted.)

> 　　[6]　Plaintiff maintains that the arbitration panel failed to adjudicate his common law bad faith claim on the merit. However, the Court disagrees with Plaintiff's characterization of the

> proceedings. Indeed, while the arbitration panel did not address the factual sufficiency of Plaintiff's bad faith claim, it determined that Plaintiff's claim failed as a matter of law under well-established California precedent. ECF No. [36-5].

Dkt.46 *6-8.

## II.   ARGUMENT AND CITATIONS OF AUTHORITY.

24.    This Court should confirm the Award and enter judgment against Gomez because (1) this Court is the appropriate forum to confirm the Award; (2) Allied has filed the instant Motion/Petition to confirm the Award within one year after the Award was issued; and (3) the Award has not been vacated, modified, or corrected, and the time to do so has expired. *See*, Exhibit A.

### A.   9 U.S.C. § 9 Authorizes the Court to Confirm the Arbitration Award and Enter Final Judgment.

25.    Section 9 of the FAA requires Federal Courts to confirm arbitral awards. It provides in pertinent part as follows:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration....then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title...

9 U.S.C.A. § 9.

26.    Thus, where a court is empowered to order a case to arbitration, it is also vested with the authority to confirm the award and enter judgment accordingly. *Marine Transit Corporation v. Dreyfus*, 284 U.S. 263 52 S. Ct. 166, 170 (1932); *Booth v. Hume Publishing*, 902 F.2d 905 (11th Cir. 1990); *T&R Enterprises v. Continental Grain Co*, 613 F.2d 1272, 1278-79 (5th Cir. 1980).

6

27.     Because the parties' arbitration agreement specifies that the arbitration was to be governed by the Commercial Rules of the American Arbitration Association[4], including Rule 52 (c) which states, "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof[,]" the Award is due to be confirmed. *Booth v. Hume Pub., Inc., supra* 902 F.2d at 930; *International Broth. Of Elec. Workers, Local Union 824 v. Verizon Florida, LLC*, 803 F.3d 1241, 1248 (11th Cir. 2015), citing *Idea Nova v. GM Licensing*, 617 F.3d 177 (2nd Cir. 2010) (holding that incorporation of AAA rules was equivalent of consenting to judicial confirmation); *Qorvis Communications, LLC v. Wilson*, 549 F.3d 303, 311(4th Cir. 2008).

### B.     Confirmation is Mandatory.

28.     The FAA "imposes a heavy presumption in favor of confirming arbitration awards." *Riccard v. Prudential Ins. Co.*, 307 F.3d, 1277, 1288 (11th Cir. 2002). In fact, judicial confirmation of an arbitration award is ***required*** in the absence of an order modifying or vacating the award.  The Court lacks discretion to take any action other than confirmation absent such a ruling.  *See, Cullen v. Paine, Webber,* 863 F.3d 851, 854 (11th Cir. 1989) ("confirmation can only be denied if an award has been corrected, vacated or modified in accordance with the Federal Arbitration Act."); *Booth v Hume*, *supra*, 902 F.2d at 932.

29.     In this case, there is no conceivable basis upon which the Court might grant a motion to correct, vacate, or modify the arbitral Award. Moreover, *and just as importantly*, the time in Gomez had to file such a  motion has expired. *See*, *McLaurin v. Terminix International Company, LP*,  13 F.4th 1232, 1238 (11th Cir. 2021) (if three-month deadline for the losing party to file a motion to vacate, modify, or

---

[4] See, Exhibit "B" Policy, at § V.C.

change the award passes, "then the losing party will be unable to defend against a later-filed motion for confirmation on any grounds set out in Section 10 or Section 11") citing, *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F. 2d 851, 854 (11th Cir. 1989) ("[T]he failure of a party to move to vacate an arbitral award within the three-month limitations period prescribed by section 12 of the [FAA] bars him from raising the alleged invalidity of the award as a defense in opposition to a motion brought under section 9 of the [FAA] to confirm the award.")

30.    Here, Gomez did not file any formal motion to correct, vacate or modify the Panel's Award within three months of its entry. 9 U.S.C. §§ 10 and 11 (establishing three-month time period.) Moreover, the Court found Gomez's November 10, 2021 motion reopen the case or in the alternative determine that Florida law controls the parties' arbitration was "tantamount to a motion to vacate the arbitration panel's determination that California law applies to Plaintiff's common law bad faith claim and subsequent grant of summary judgment in Defendant's favor" (Dkt.46 at 7) and denied Gomez's motion. (Dkt.46) These facts alone preclude the Court from taking any action but to confirm the Award and enter judgment thereon.

## C.    Confirmation is a Summary Proceeding.

31.    The law is clearly established that judicial confirmation of arbitral awards is in the nature of a summary proceeding. *Cullen v. Paine, Webber*, supra, 863 F.3d at 854 ("A confirmation proceeding under 9 U.S.C. §9 is intended to be summary...."); *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (a "court's confirmation of an arbitration award is usually routine or summary.") As noted in *Booth*, "[t]he District Court need not conduct a full hearing on a motion to...confirm; such motion may be decided on the papers without oral testimony."

32.     Allied has filed the instant Motion/Petition to confirm the Award within one year after the Award was issued. The Award has not been vacated, modified, or corrected and the time to do so has expired. This Court should summarily grant the instant Motion/Petition and put these proceedings to an end.

## III.   CONCLUSION

33.     For the foregoing reasons, it is respectfully requested that the Court:

A.     Confirm the arbitral Award and enter judgment in favor of Defendant Allied Professionals Insurance Company, A Risk Retention Group, Inc. and against Defendant Anibal Gomez; and

B.     Reserve jurisdiction for the Court to rule on applications for attorney's fees and for taxation of costs.

LUKS, SANTANIELLO, PETRILLO, COHEN & PETERFRIEND
150 W. Flagler Street, Suite 2600
Miami, FL 33130
Telephone:  (305) 377-8900
Facsimile:  (305) 377-8901

By:____/s/ *Scott D. Kirschbaum*_____
SCOTT D. KIRSCHBAUM
Florida Bar No. 954489
SKirschbaum@insurancedefense.net

Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by the CM/ECF service and/or by Electronic Mail on all counsel or parties of record on the Service List below this this 17th day of November 2022.

**<u>*Attorney for Plaintiff*</u>**
Matthew T. Christ
Domnick Cunningham & Whalen
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, Florida 33410
Phone: (561) 625-6260
Fax: (561) 625-6269
MTC@dcwlaw.com
EService@dcwlaw.com

Exhibit "A"

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

| | |
|---|---|
| ANIBAL GOMEZ<br><br>       Claimant,<br><br>vs.<br><br>ALLIED PROFESSIONALS INSURANCE<br>COMPANY, A RISK RETENTION GROUP,<br>INC.<br><br>       Respondent | AAA Case No.: 01-20-0005-4247<br><br><br>ORDER |

Claimant (Gomez) brought a Florida common law, third-party insurance bad faith claim against Respondent (Allied), alleging Allied had committed bad faith in its handling of a professional liability claim against Allied's insured, Dr. Batillo. The claim resulted in a judgment of $3,713,987.88 in favor of Claimant and against Dr. Batillo that was in excess of its $1,000,000.00 policy limit. Dr. Batillo filed his own claim against Allied. Both claims were consolidated in this arbitration.

The parties jointly moved the Arbitrators (Panel) to determine whether Florida or California law applied. Briefs were submitted and oral argument was held. In a September 7, 2021 ruling the Panel determined that the arbitration shall be governed by the law of California.

Allied now seeks summary judgment in its favor against Gomez. The basis for the motion is that California law does not recognize the right of a third party to the insurance contract to sue the insurer for bad faith handling of the claim.

Gomez has served a response to Allied's motion in which it "does not oppose entry of a Final Award in Allied's favor," but does oppose Allied's request to pay its one-half of the AAA fees and expenses and Arbitrators' compensation incurred by Allied.

California law holds that there is no private cause of action for a third-party, common law bad faith claim against an insurance company for its failure to settle a claim within the policy limits. The insured may bring an action against the insurer because it has a contractual relationship with it. (*Kransco v Am. Empire* (2000) 23 Cal.4th 390, 400-401; *PPG Industries v Transamerica Insurance* (1999) 20 Cal.4th 310, 312.) Without a contractual relationship with the insurer, there is no right to prosecute a tort claim against it. (*Wexler v California Fair Plan* (2021) 63 Cal.App.5th 55, 62-63.) [1]

Since there was no contractual relationship between Gomez and Allied, under California law, Gomez may not bring a tort action against Allied based on its handling of the claim against its insured, Dr. Batillo.

Allied's motion to have judgment entered in its favor against Gomez is granted.

The administrative fees and expenses of the AAA and the compensation of the arbitrators are to be borne as incurred.

This Order is in full settlement of all claims and counterclaims submitted to this Arbitration in the matter of Anibal Gomez v Allied Professionals Insurance Company, a Risk Retention Group, Inc., AAA Case No. 01-20-0005-

---

[1] The insured may assign its claim against its insurer to a third party. (*Pinto v Farmers* (2021) 61 Cal.App.5th 676.) However, there has been no assignment here as Dr. Batillo is prosecuting his own claim against Allied.

4247. All claims not expressly granted herein are hereby denied.

The Arbitrators reserve jurisdiction to decide any and all issues not adjudicated in this Order.

Dated: November 18, 2021

Justice Stephen J. Kane (Ret.), Chair
Arbitrator


Hon. Christopher Skelly
Arbitrator


Eric Dobberstein
Arbitrator

3

4247. All claims not expressly granted herein are hereby denied.

The Arbitrators reserve jurisdiction to decide any and all issues not adjudicated in this Order.

Dated: November 18, 2021

Justice Stephen J. Kane (Ret.), Chair
Arbitrator

Hon. Christopher Skelly
Arbitrator

Eric Dobberstein
Arbitrator

3

Exhibit "B"

# ALLIED PROFESSIONALS INSURANCE COMPANY,
## A Risk Retention Group, Inc.


**National Chiropractic Council**

## Declarations to Claims Made Professional Liability Policy

| | |
|---|---|
| Named Insured/Certificate Holder: | Anthony Wayne Battillo, D.C. |
| Certificate No: | APIC 216376 |
| Master Policy Held By: | National Chiropractic Council |
| Policy No: | APIC NCC 1001 - Preferred |
| Policy Issued In: | CA |
| Claims Reporting Basis: | Claims Made |
| Professional Services: | Chiropractic |
| Exclusions: | As stated in Section V of Endorsement to Policy |
| Limitations: | None |
| Territory: | **United States -** The Named Insured must maintain professional licensing as required by each state in which the Named Insured practices for coverage to apply in that state. |
| Individual Deductible per claim: | None |
| Endorsement(s): | Chiropractic |
| Limits of Liability: | $1,000,000 Each Claim / $3,000,000 Aggregate |
| Total Annual Cost Basis: | $2,296.00 (Premium - $1,657.50; Policy Fee - $ 292.50; Membership Fee - $ 150.00; Install Chrg - $ 196.00) |
| Premium Based On: | Annual Reporting Period |
| Payment Term / Plan Type: | Quarterly |
| Lapse Dates: | From:  To: |
| Retroactive Date: | 04/15/2004 |
| Policy Period: | From:  04/15/2009 To: 04/15/2010 |
| Please direct all inquires to your broker: | Phone: |

**(All dates are at 12:01 a.m. at the address of Named Insured.  Unless renewed, coverage ends on the Expiration Date.)**

**General:**  This Declarations Page identifies the person(s) named herein as a named insured under the terms and conditions of a policy issued to the members of the National Chiropractic Council.  The terms and conditions of the policy apply to all members who hold a certificate of insurance.  The terms and conditions of this certificate apply only to the person(s) named herein and the insurer.

**Coverage:**  Coverage is afforded to person(s) named herein as Named Insureds according to the terms and conditions of the policy to which this certificate refers.  No other rights or conditions, except as specifically stated herein are granted or inferred.  When your Claims Reporting Basis is "Claims Made" the Policy affords defense and damage coverage only for claims made against the Named Insured 1) arising from the performance of Professional services rendered during the subsequent to the Retroactive Date and 2) made against the Named Insured and reported to the Company during the Policy Period.  Please review the policy carefully and discuss any questions regarding coverage with your insurance broker (if applicable) or your program manager at (800) 622 6869.

**Extended Coverage:**  If your Claims Reporting Basis is "Claims Made" and the Policy is terminated either by you or the Company you may apply for Extended Coverage so that you can submit claims after your policy period ends for incidents that occurred during your policy period.  An application for Extended Coverage must be received within 30 days of termination of your policy, unless otherwise modified by any applicable State Mandatory Endorsement attached hereto.

**Notice:**  Report in writing within 48 hours any & all claims against you and any & all incidents that you believe may result in a claim against you, even if groundless, to National Chiropractic Council, 1851 E. First Street, Suite 1160, Santa Ana, CA  92705.

**Notice:**  This policy is issued by your risk retention group. Your risk retention group may not be subject to all of the insurance laws and regulations of your State. State insurance insolvency guaranty funds are not available for your risk retention group.

Countersigned by:   *Philip Stump*
_____
Authorized Representative

## ALLIED PROFESSIONALS INSURANCE COMPANY, a RISK RETENTION GROUP, INC

# Professional Liability Insurance Policy

Notice:  This policy is issued by your risk retention group.  Your risk retention group may not be subject to all of the insurance laws and regulations of your State.  State insurance insolvency guaranty funds are not available for your risk retention group.  In consideration of the payment of the premium, in reliance upon the statements made in the application for insurance provided under this Policy, and subject to the limits of liability, exclusions, conditions, and other terms of this Policy, the Company and the Named Insured (as hereinafter defined) enter into the following contract for insurance:

## POLICY CONDITIONS

### I.  DEFINITIONS

When used in Policy:

**A.   Claim Reported** - means a written notice filed by the Named Insured and received by the Company, or a written notice or a suit filed by a claimant or other person acting for the claimant and received by the Named Insured and by the Company that alleges damages to an injured party from acts or omissions by the Named Insured that are covered by this Policy;

**B.   Damages** - means all damages including damages for death and for medical care resulting from injury.  The term "Damages" does not include any sums demanded or awarded as punitive or exemplary damages but does include the sums expended defending the Named Insured from any claims;

**C.   Injury** - means bodily injury, sickness, or disease sustained by any person;

**D.   Professional Corporation** - means a professional corporation as defined in the Declarations;

**E.   Named Insured** - means the person or organization named in the Declarations of this Policy;

**F.   Incident** - means any act or omission in performing professional services;

**G.   Professional Services** - means services performed in the practice of the professional specialty or services designated in the Declarations;

**H.   Suit** - includes (1) a cross claim; and (2) an arbitration to which the Named Insured is required to submit or to which the Named Insured has submitted with the Company's consent.

### II. POLICY PERIOD; PREMIUMS; AUDITS

**A.   Policy Period.**  The initial policy period of this Policy is stated in the Declarations forming a part of this Policy.  Subject to the right of the Company to cancel this Policy in accordance with the provisions of the Cancellation Condition, the Policy Period may be extended for successive periods by payment of the required renewal premium, and any other amounts required as a condition of such renewal, to the Company on or before the effective date of each successive period.  The expiration date of such period shall be the end of the policy period.

**B.   Premium.**  All premiums and other charges for this Policy shall be computed in accordance with the Company's rules, rates, rating plans, premiums, and minimum premiums applicable to the insurance afforded herein and in effect with respect to the period for which premiums are due.

All premiums and other charges for this Policy are payable in advance to the Company or its authorized representative.  The first payment is due at inception of the Policy.  Each renewal payment is due on or before the expiration of the period for which the preceding payment was paid.  Any payment not paid on or before its due date will be in default.

**C.   Inspection and Audit.**  The Company may examine, audit, and inspect the Named Insured's property, business operations, books, and records at any time during the policy period and renewals thereof within three (3) years after the final termination of this Policy, as far as they relate to the subject matter of this insurance.  The Company is not required to make such inspections and audits and does not guarantee that the Named insured's operations are safe or that they conform to any laws, rules, or regulation.

### III. CANCELLATION & NON-RENEWAL

**A.   Cancellation or Non-Renewal.**  The Named Insured may cancel this Policy by surrender thereof to the Company or any of its authorized agents, by mailing to the Company, written notice stating when thereafter the cancellation shall be effective.  The Company may cancel or non-renew this Policy by mailing to the Named Insured at his or her latest address shown on the Company records, written notice stating when, not less than thirty (30) days thereafter, such cancellation or non-renewal shall be effective, unless cancellation is for nonpayment of premium in which case such notice will be not less than ten (10) days prior to the effective date of cancellation or non-renewal.  The mailing of notice as aforesaid shall be sufficient proof of notice.  The time of surrender or

the effective date and hour of cancellation or non-renewal stated in the notice shall become the end of the policy period.  Delivery of such written notice either by the Named Insured or by the Company shall be equivalent to mailing.  If this Policy is cancelled, the Company will send the Named Insured a refund of any unearned premium, computed on a pro-rata basis, as soon as practicable thereafter.  Payment or tender of unearned premium is not a condition of cancellation.

### IV. CLAIMS

**A.   Incident Report.**  Upon the happening of any incident reasonably likely to involve this insurance, written notice containing information sufficient to identify the Named Insured, time, place, and circumstances of the event, and the names and addresses of the injured and of available witnesses must be given by or for the Named Insured to the Company within three (3) business days of the happening of any such event or as soon as practicable.

**B.   Notice of Claim or Suit.**  If a claim or suit is reported against the Named Insured based on an incident covered by this Policy, the Named Insured shall, within three (3) business days, by certified mail return receipt requested forward to the Company every demand, notice, summons, or other process received by him or her or by his or her representative.  Failure to give such notice, including but not limited to failure to give notice of a claim or action until after the Named Insured has submitted to the jurisdiction of a court or until after judgment, shall constitute a material breach of the Policy resulting in total loss of coverage for such claim or action and shall constitute substantial and actual prejudice which adversely affects the rights of the Company, which bases its Policy and premiums on cost-containment methods of dispute resolution, mandatory arbitration, and settlement.

**C.   Cooperation.**  The Named Insured shall cooperate with the Company and, upon the Company's request, assist in making settlements in the conduct of suits and other proceedings; and the Named Insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The Named Insured shall not, except at his or her own cost, voluntarily make any payment or assume any obligation without the consent of the Company.

### V.  GENERAL CONDITIONS

**A.   Abide by Terms.**  The Named Insured specifically agrees to abide by the terms and conditions of this Policy and by all rules and regulations of the Company relating to the conduct of the Named Insured's professional practice.

**B.   Action Against the Company.**  No action shall lie against the Company, its Agents, Employees, Brokers, or the Master Policy Holder unless, as conditions precedent thereto, 1) there shall have been full compliance with all of the provisions of this Policy, 2) the amount of the Named Insured's obligation to pay shall have been finally determined either by judgment against the Named Insured after actual arbitration or trial or by written agreement of the Named Insured, the claimant and the Company, and 3) such action must be commenced within one (1) year of the date of loss or damage to the Named Insured.

**C.   Arbitration.**  If a dispute or claim shall arise with respect to any of the terms or provisions of this Policy, or with respect to the performance by any of the parties to the Policy, then any party or that party's authorized representative may, by notice as herein provided, require that the dispute be submitted within fifteen (15) days to an arbitrator in good standing with the American Arbitration Association under the Commercial Arbitration Rules of the American Arbitration Association then in effect.  Any arbitration undertaken pursuant to the terms of this section shall be governed by the Federal Arbitration Act and shall occur in Orange County, California.

**D.   Application Warranty.**  The Named Insured warrants that he or she has made true, correct, and full answers to all questions propounded to him or her upon the application of insurance coverage and agrees to provide the Company with full and correct answers to any other questions related to his or her

competence or financial ability as shall be reasonably propounded to him or her by the Company.

**E.   Breach of Policy.**  Breach by the Named Insured or any person covered by this Policy of any of the conditions of this Policy shall subject the Named Insured to termination at the instance of the Company and upon thirty (30) days written notice.

**F.   Change of Address.**  The Named Insured will keep the Company apprised of his or her current addresses, both business and residential, and will report in writing any change of address within ten (10) days.

**G.   Changes.**  Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or bar the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part this Policy by an authorized representative of the Company.

**H.   Assignment.**  Assignment by the Named Insured of his or her interest under this Policy shall not bind the Company until its consent is endorsed hereon; if however, the Named Insured shall die, such insurance as is afforded by this Policy shall apply to the Named Insured's legal representative, as the Named Insured, but only while acting within the scope of his or her duties as such.

**I.   Other Insurance.**  If the Named Insured has other valid and collectible insurance available, the insurance afforded by this Policy shall be secondary and shall not apply unless and until the limits of liability of such other insurance have been exhausted.

**J.   Subrogation.**  In the event of any payment under this Policy, the Company shall be subrogated to all the Named Insured's rights of recovery against any person or organization, and the Named Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Named Insured shall do nothing after loss to prejudice such rights.  The Company reserves the right to make counter-claims and to bring suit against persons making frivolous claims against the Named Insured.  The Named Insured hereby grants that right to The Company and acknowledges that any award resulting from such counter-claim or suit shall be the property of the Company.

**K.   Non-Assessability.**  This Policy is non-assessable.

**L.   Special Statutes.**  Any and all provisions of this Policy which are in conflict with statutes of the State wherein this Policy is issued are understood, declared, and acclaimed by the Company to be amended to conform to such statutes.

**M.   Consent Form and Arbitration Form Required as a Condition of Coverage.**  Except when "Preferred" is indicated in the Declarations, it shall be a condition precedent to The Company's obligations under this Policy that the Named Insured shall have obtained 1) a written consent to treatment and 2) a written consent to mandatory binding arbitration from each patient or each patient's legal representative prior to the commencement of the treatment or procedure giving rise to the injury.  <u>Execution of these consents after commencement of treatment shall not satisfy this condition.</u>  Evidence of these consents shall have been recorded on a permanent document whose general form and content shall have been approved by the Company prior to its use.  The Company shall have the right, in its sole discretion, to approve or reject any proposed form and the Company shall not be liable for the cost of furnishing or providing any such form to any Named Insured.  For the purpose of complying with this Section, documents identical in form and content to the consent forms attached shall be deemed to be acceptable to the Company.  The Named Insured shall make copies of such consents available to the Company upon request.  The Named Insured is excused from complying with the provisions of this Section M when:

(1)   either, (a) care is being rendered to  patient on an emergency basis where there is not sufficient time to obtain such consents, and the Named Insured makes reasonable efforts to obtain such consents after such emergency treatment is rendered; <u>or</u> (b) the Named Insured is specifically excused from obtaining such consents  pursuant to written endorsement to the Policy;              <u>and</u>

(2)   the Named Insured informs the Company in writing by certified mail, return receipt requested, within five (5) days of rendering such care, that treatment was rendered to a patient without such consents being obtained.

**N.   Territory.**  This Policy affords coverage for Professional Services rendered only in the State(s) set forth in the Declarations.

**O.   Captions.**  Captions or headings in this Policy are inserted only as a matter of convenience and for reference and shall not be deemed to define, limit, enlarge, or describe the scope of this policy or the relationship of the parties and shall not affect the Policy or the construction of any provisions herein.

**P.   Endorsements.**  Any endorsements to this Policy are part of this Policy, and all the conditions and terms of this Policy shall apply to such endorsements.

**Q.   Settlements.**  The Company may settle any claim without the Named Insured's consent, unless the Named Insured: 1) Objects to the proposed settlement, 2) Requests that the amount of the proposed settlement be paid directly to the Named Insured by the Company and 3) Agrees to take over the defense of the claim at the Named Insured's sole expense.  If the Named Insured makes such an election, then upon payment by the Company to the Named Insured of the proposed settlement amount, the Company shall have no further obligation of any kind to further defend or indemnify the Named Insured with regard to such claim.

**R.   Choice of Law.**  This Policy and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of the State of California, including all matters of construction, validity, performance, and enforcement without giving effect to the principles of conflict of laws.  Notwithstanding this provision, arbitration shall be governed by the Federal Arbitration Act.

**IN WITNESS WHEREOF**, the Company has caused this Policy to be signed by its authorized representative(s), but the same shall not be binding unless countersigned by a duly authorized representative of the Company on the Declarations page.



By: _____

Authorized Representative

C2001

# ALLIED PROFESSIONALS INSURANCE COMPANY, a RISK RETENTION GROUP, INC

## Chiropractic Professional Coverage Endorsement

n consideration of the payment of premium, in reliance upon the statements made in the application for insurance provided under the Policy and this Endorsement, and subject to all of the terms of the Policy including this Endorsement to the Policy, the Company agrees with the Named Insured as follows:

### I. INSURING AGREEMENTS

**A. Professional Liability.** The Company shall pay on behalf of the Named Insured all sums which the Named Insured shall become legally obligated to pay as Damages because of any claim reported against the Named Insured for injury arising out of the rendering of or failure to render, during the Policy Period as set forth in the Declarations (the "Policy Period"), Professional Services in the practice of the Named Insured as stated in the Declarations of this Policy 1) by the Named Insured or 2) by any person for whose acts or omissions the Named Insured is legally responsible (as described in Section III hereof) and 3) only if such claim is first made and is reported to the Company during the Policy Period.

**B. Defend Claim.** The Company shall have the right and duty to defend each covered claim reported against a Named Insured during the Policy Period, even if any of the allegations of the claim or suit are groundless, false, or fraudulent (except as excluded by this Policy) and the Company may make such investigation and make settlement of any claim reported as it deems expedient. The Company's costs of providing such a defense shall be included in the computation of the Named Insured's limits of liability. The Company shall not be liable for the cost of legal services by any personal attorney selected by the Named Insured without the written consent of the Company.

**C. Supplementary Payments.** The Company will pay, in addition to the applicable limit of liability:

**1. Expenses.** All costs assessed against the Named Insured in any suit defended by the Company, and, with respect to any judgment, all interest on the entire amount of such judgment that accrues before the Company has paid or tendered or deposited in court that part of the judgment that does not exceed the limit of the Company's liability thereof; and

**2. Bonds.** Premiums on appeal bonds required in any suit to which this Policy applies, and to furnish such appeal bonds necessary to appeal such suit up to the Company's limit of liability, but without any obligation to apply for or furnish a bond in excess of such limit of liability; and premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of the Company.

### II. PERIOD OF COVERAGE

The Company shall not have any obligations under the above Insuring Agreements if a claim reported against a Named Insured during the Policy Period is based on an incident prior to the Policy Period stated in the Declarations of this Policy or in the Declarations of an earlier dated policy issued by the Company of which this Policy is a renewal or replacement. This insurance applies only to Professional Services rendered or which should have been rendered during the Policy Period stated in the Declarations or in the Declarations of an earlier dated policy issued by the Company of which this Policy is a renewal or replacement and then only if a claim is first reported during the Policy Period.

### III. PERSONS INSURED

**A.** Except as permitted by Section III-B-4, this Policy does **not** afford coverage for any act or omission of any physician, surgeon, podiatrist, nurse, anesthetist, chiropractor, acupuncturist, or physical therapist employed by the Named Insured or working on the premises of or with the Named Insured or the Named Insured's chiropractic Professional Corporation, unless such person is specifically listed in the Declarations of this Policy as a Named Insured.

**B.** This Policy **does** afford coverage within the applicable limits to the following persons for whose acts or omissions the Named Insured is legally responsible, but only to the extent of the Named Insured's liability for the acts of these persons in connection with the rendering or failing to render Professional Services, subject to all the same terms, conditions, and exclusions that apply to the Named Insured:

**1.** The Named Insured;

**2.** If the Named Insured practices his or her profession as a chiropractic professional corporation which employs no other physician, surgeon, podiatrist, nurse, anesthetist, acupuncturist, or physical therapist, and as long as all other shareholders, officers, and directors of said corporation (and all present and future chiropractors employed by the Named Insured or said corporation) are also insured by the Company , and if coverage for a chiropractic professional corporation is indicated in the Declarations, the chiropractic professional

corporation and any other officer or director thereof with respect to covered incidents by the Named Insured or such employed chiropractors listed in the Declarations;

**3.** Any employee (other than a physician, surgeon, podiatrist, nurse, anesthetist, chiropractor, acupuncturist, or physical therapist) of the Named Insured (or the Named Insured's chiropractic professional corporation if coverage for the Named Insured's chiropractic professional corporation is indicated in the Declarations) while acting within the scope of his or her duties as such;

**4.** Any chiropractor while employed by the Named Insured (or the Named Insured's chiropractic professional corporation if coverage for the Named Insured's chiropractic professional corporation is indicated in the Declarations), and temporarily serving as a relief or substitute chiropractor for a period not to exceed fourteen (14) consecutive days, provided that such chiropractor has made application to the Company for insurance and the Company has issued its acceptance of such application.

**C.** This Policy does afford coverage within the applicable limits and subject to all the same terms, conditions, and exclusions that apply to the Named Insured to any additional insured listed in the Declarations for the period therein indicated but in no event later than the termination of the Named Insured's Policy but only for a covered incident by the Named Insured at the office(s) or clinic(s) of, owned by or shared by the additional insured.

### IV. LIMITS OF LIABILITY

**A.** The limit of liability stated in the Declarations as applicable to "Each Claim" is the limit of the Company's liability for loss resulting from any one claim or suit or all claims or suits because of injury or damages (and the cost of defending against same) to any one person or entity for all acts arising out of the rendering of, or failure to render, Professional Services upon which the claims or suits are based. Two or more claims arising out of a single act, error, or omission or a series of related acts, errors, or omissions shall be treated as a single claim; and

**B.** The limit of liability stated in the Declarations as "Aggregate" is, subject to the provisions of Paragraph A respecting "Each Claim," the total limit of the Company's liability for all claims reported during the Policy Period.

**C.** Such limits of liability shall apply separately to each Named Insured only when so indicated in the Declarations, except the inclusion of more than one (1) Named Insured or the inclusion of shareholders, officers, directors, employees, or agents of the Named Insured in any one (1) claim shall not increase the Company's liability applicable to "Each Claim" as set forth in Paragraph A. Where limits of liability at the time of an incident or injury are not identical to limits of liability at the time the claim is made or reported, the limits of liability at the time of the incident or injury shall apply.

### V. EXCLUSIONS

**A. No Defense or Payment of Damages.** This Policy **does not** apply to defense or payment of damages for any claim arising out of the following:

**1. Activities Outside the Legal Scope of Practice.** Any claim arising out of a procedure performed that is outside the legal scope of chiropractic practice in the State(s) in which the service is rendered;

**2. No Active License.** Any act or omission if at the time of such act or omission, the Named Insured did not hold a current, active license, as required by the State(s) in which the act or omission occurred, to practice the profession listed in the Declarations;

**3. Excluded Professional Services.** Any claim arising out of any Professional Service listed below:

a. Treatment or reduction of any fracture;

   b. Obstetrics or gynecology, including the delivery of babies, or care of newborn infants until they are fourteen (14) days old;

   c. Colonic irrigations, dehydration of hemorrhoids;

   d. Treatment of cancer, epilepsy, or acquired immune deficiency syndrome, except that treatment is not excluded if 1) such treatment is solely to alleviate pain or the side effects of medical care; and 2) during the entire period of treatment, the patient is under the care of a licensed physician for the condition or disease; and 3) the Named Insured or an insured under this Policy does not interfere with the course of treatment recommended by such patient's treating physician;

©Allied Professionals Insurance Services, Inc.  All Rights Reserved, Rev. 1/16/08

APIC-NCC-2002

e.  Magnetic therapy, gemstone therapy, meridian therapy, stressology, internal coccyx adjustment, and use of the Toftness device;

f.  Use of x-ray for other than diagnostic purposes;

g.  Acupuncture;

h.  Use of microwave, radium, fever therapy, or

i.  Manipulation under anesthesia.

**4.  Failure to Obtain Consent Form and Arbitration Form Executed by Patient.** When "Elite" is indicated in the Declarations, any claim where the Named Insured cannot provide to the Company a consent form and arbitration form pursuant to the requirements set forth in Section M of the Policy;

**5.  Breach of Application Warranty** – Any claim where the Named Insured violated General Condition Section D of the Policy by failing to disclose the possibility of such claim.  This exclusion applies only to such undisclosed potential claim.

**6.  Collection Suits.**  Any claim arising as a counter-claim by a person who was sued for professional fees.  Collection suits triggering this exclusion include, but are not limited to, those collections suits filed by a collection agency.  Any claim made subsequent to a collection suit shall be presumed to be in response to the collection suit and to be in the nature of a counter-claim and, therefore, shall be within this exclusion;

**7.  Drugs or Surgery.**  Any injury arising out of the use, administration, or prescription of any drug or pharmaceutical for the treatment of human beings or arising out of the performance of any procedure involving the cutting or penetration of human tissue;

**8.  Failure to Obtain Certificate of Insurance.**  Any claim against the Named Insured that involves, among others, any health care practitioner with whom the Named Insured currently or in the future 1) is a partner, 2) an employee, 3) an independent contractor or 4) shares office space, where the Named Insured has failed to procure for the Company, automatically and without request, a current certificate of insurance from the professional liability insurer of such health care provider, which provides that the Master Policy Holder named on the Declarations of this Policy receive ongoing notification of the status and any cancellation of such health care provider's professional liability insurance;

**9.  Intoxicants/Narcotics or Drugs.**  Any claim arising from a service rendered, or which should have been rendered and was not, while the Named Insured or its employee or agent is under the influence of intoxicants, narcotics, or drugs;

**10. Sex Act.**  Any claim arising out of any sexual act, or acts performed or alleged to have been performed by the Named Insured or an employee or agent of the Named Insured;

**11. Illegal or Criminal Act.**  Any claim arising from an alleged criminal act, or any act allegedly committed while in violation of any law or ordinance;

**12. Workers' Compensation.**  Any injury arising out of any obligation for which a Named Insured or an insurer has been or may be held liable under Workers' Compensation, Unemployment Compensation, Disability Benefits, or any similar law;

**13. Guaranteed Results.**  Any claim arising from guaranteeing the results of services of the Named Insured or its employees or agent;

**14. Peer Review Activities.**  Any claim arising from participation on a peer review committee, including, but not limited to, peer review committees of a hospital, trade association, or professional standards review organization;

**15. Officers' and Directors' Liability.**  Any injury arising out of the rendering of or failure to render Professional Services by any other person for whose acts or omissions the Named Insured may be held liable as a member, partner, officer, director, or shareholder of any professional partnership, association, or corporation that is not listed in the Declarations as being insured by this Policy;

**16. Proprietors.**  Any liability of the Named Insured as a proprietor, medical director, superintendent, administrator, or executive officer of any hospital, sanitarium, surgicenter, clinic with bed and board facilities, skilled nursing facility, convalescent hospital, laboratory, or business enterprise;

**17. Employed Doctors.**  Any injury from the acts or omissions of any permanently (employed for a period exceeding fourteen (14) consecutive days) employed doctor unless such written notice of the new employment of such doctor is given to the Company within thirty (30) days after such employment begins and the Company has issued its acceptance of an application for insurance by such employed doctor;

**18. Assumed Liability.**  Any liability assumed by the Named Insured, including liablity due to breach of contract or assumed by a Named Insured under oral or written contract or agreement or liability resulting from factual admissions by the Named Insured;

**19. Government Employment.**  Any injury from the acts or omissions of Named Insured or its employees or agents while employed by the United States Government or any other governmental or public entity;

**20. Owned or Nonowned Motor Vehicles.**  Any claim arising from the use of an owned or nonowned motor vehicle by the Named Insured or any shareholder, officer, director, employee, partner, or agent of the Named Insured;

**21. Other Activities.**  Any claim arising from statements, acts or omissions by the Named Insured or its employees or agents or any other person alleged to be in connection with or to relate to any of the following: interference with contract; violations of state and/or federal antitrust or deceptive advertising laws; false arrest, detention or imprisonment; interference with a person's right to occupy his or her property undisturbed, including wrongful entry and wrongful eviction; products liability; malicious prosecution; any injury arising out of the writing of an article or paper for any publication; libel; slander; trade libel; trade slander; harming a person's reputation or violating a person's right of privacy; any injury or loss caused directly or indirectly by nuclear reaction, radiation, or radioactive contamination, whether controlled, uncontrolled, or accidental in nature or however caused, or any consequence of any of these; any injury or loss relating directly or indirectly to the Named Insured's actions as the employer of any claimant; conversion; interference with prospective advantage; unfair competition; unfair trade and/or business practices; misappropriation of trade secrets; conspiracy to do any unlawful or tortious act; abuse of process; intentional or negligent inflection of emotional distress; negligent misrepresentation; fraud; any other intentional tort (even if such activities are related to a Named Insured's rendering of or failure to render Professional Services); or any injury from any act or any omission to the extent that such injury is not attributable to the rendering or failure to render Professional Services;

**22. Research Subject.**  Any claim by any person who has ever been a research subject of the Named Insured or who was ever solicited to be a research subject of the Named Insured.

**B.  No payment of Punitive Damages (Defense Only).**  This Policy will provide a defense only, but does not provide any payment of punitive or exemplary damages.

## VI.  EXTENDED COVERAGE

If coverage terminates under this Policy for any reason, the Named Insured (and the Named Insured's professional corporation and/or additional insured, but only if named in the Declarations of this Policy) shall have the right upon payment of an additional amount (to be computed in accordance with the Company 's rules, rating plans, and premiums applicable) to purchase Extended Coverage (or when no additional amount is due, to request Extended Coverage in writing), within thirty (30) days from the termination date of this Policy (or in the case of said corporation or additional insured thirty (30) days from the termination of coverage for said professional corporation or additional insured).  The Extended Coverage will provide an additional reporting period in which claims otherwise covered by this Policy may be reported, except that Extended Coverage purchased by or for said professional corporation and/or said additional insured will apply 1) only to an incident by a Named Insured; 2) only if such incident occurred during the Policy Period and was reported during the Policy Period or Extended Coverage Period of said Named Insured; and 3) only if such incident occurred during the period of coverage for said professional corporation and/or additional insured for incidents by said Named Insured.  There shall be no charge for Extended Coverage if the Named Insured retains access to complete records for all patients treated by the Named Insured at any time during the Policy Period and either a) the Named Insured has been continuously a Named Insured for at least a five (5) year period from the date this provision became a part of the Policy, or b) Occurrence is the Claims Reporting Basis indicated in the Declarations.  In addition, if the Company cancels or non-renews this Policy for any reason other than non-payment of premium, the Named Insured shall automatically have an additional reporting period of 30 days from the termination date of coverage in which claims otherwise covered by this Policy may be reported.

By: _____

Authorized Representative

Exhibit "C"

AMERICAN ARBITRATION ASSOCIATION

COMMERICIAL TRIBUNAL

| | |
|---|---|
| ANIBAL GOMEZ, ANTHONY W. BATTILLO,<br><br>  CLAIMANTS<br><br>V<br><br>ALLIED PROFESSIONALS INSURANCE COMPANY, A RISK RENTION GROUP, INC,<br><br>  RESPONDENTS | Case No.: 01-20-0005-4247<br>        01-20-0015-6069<br><br>ORDER RE CHOICE OF LAW |

At the scheduling conference conducted on June 25, 2021 counsel requested and the Panel ordered a briefing schedule for the parties to serve their cross motions on the issue of choice of law. Briefs have been served and considered by the Panel along with oral argument that was heard on September 3, 2021.

## INTRODUCTION

Claimant Anibal Gomez (Gomez) received chiropractic treatment from Dr. Anthony W. Battillo, D.C. (Battillo) that resulted in significant injuries to Gomez. Gomez sued Battillo in a Florida state court action. A Florida jury awarded Gomez approximately $3,700,000 in damages against Battillo.  Battillo's malpractice carrier was respondent, Allied Professionals Insurance Company (Allied). Prior

1

to trial, Gomez demanded Allied's policy limits of $1,000,000 which Allied rejected.

Gomez filed a Florida common law bad faith action against Allied in Florida state court. Allied removed the case to federal court and prevailed on a motion to compel arbitration. Battillo joined the Gomez v Allied arbitration proceeding.

### THE POLICY LANGUAGE

The APIC Policy contains two provisions that are pertinent here:

> **C. Arbitration.** If a dispute or claim shall arise with respect to any of the terms or provisions of this Policy, or with respect to the performance by any of the parties to the Policy, then any party or that party's authorized representative may, by notice as herein provided, require that the dispute be submitted within fifteen (15) days to an arbitrator in good standing with the American Arbitration Association under the Commercial Arbitration Rules of the American Arbitration Association then in effect. Any arbitration undertaken pursuant to the terms of this section shall be governed by the Federal Arbitration Act and shall occur in Orange County, California.

> **R. Choice of Law.** This Policy and the right of the parties hereunder shall be governed by and construed in accordance with the laws of the State of California, including all matters of construction, validity, performance, and enforcement without giving effect to the principles of conflict of laws. Notwithstanding this provision, arbitration shall be governed by the Federal Arbitration Act.

2

## CONTENTIONS OF THE PARTIES

Claimants contend that the substantive law of the State of Florida should govern this proceeding. Under Florida law a bad faith action against an insurer is recognized.

Respondent contends that the substantive law of the State of California should govern this proceeding. Under California law a bad faith action against an insurer is not recognized.

While acknowledging that the policy's choice of law paragraph specifies that the policy and the rights of the parties are to be governed by the law of California without giving effect to the principles of conflict of laws, Claimants argue that because the choice of law paragraph is not contained in the arbitration paragraph, it has no application here. It points to the last sentence of the choice of law paragraph ("Notwithstanding this provision, arbitration shall be governed by the Federal Arbitration Act") as indicating the choice of law provision has no application to this proceeding since it is governed by the FAA; and, since the arbitration paragraph makes no mention of choice of law, a conflict of laws analysis is required to determine which state's law applies. They then perform that analysis under the "governmental interest" test and urge the Panel to conclude that Florida state law should be selected as the controlling body of law. Finally, they argue that the law of the case doctrine requires that this proceeding be governed by Florida state law.

Respondent emphasizes that the policy language reflects the parties' intent that California law shall apply. It rejects Claimants' assertion that the choice of law paragraph is inapplicable either because it provides that the arbitration will be governed by the FAA or because the choice of law provision is not separately included in the arbitration paragraph. Respondent also contends that The

Liability Risk Retention Act (LRRA) precludes the application of Florida law. Alternatively, Respondent analyzes this case under the governmental interest test and urges the Panel to conclude that California state law should be selected as the controlling body of law under that test.

<u>DISCUSSION</u>

Both sides have cited and discussed *Mastrobuono v Shearson* (1995) 514 US 52. Several principles of interpreting and enforcing arbitration agreements and choice of law provisions are enunciated in the opinion. These include:

(1)   the FAA's central purpose is to ensure that "private agreements to arbitrate are enforced according to their terms" (*Id.* p. 52);

(2)   "But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, see *Mitsubishi* [*Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985)], so too may they specify by contract the rules under which that arbitration will be conducted." *Volt,* 489 U.S., at 479, 109 S.Ct., at 1256. (*Id.* p. 57);

(3)   A document should be read to give effect to all of its provisions and to render them consistent with each other. (*Id.* p. 63.)

(4)   The arbitration provision and choice of law provision should be harmonized with one another. (*Id.* p. 63-64.)

4

(5)   "... choice of law provision covers the rights and duties of the parties while the arbitration clause covers arbitration; neither sentence intrudes upon the other." (*Id.* p. 64.)

In *Mastrobuono* there was both an arbitration provision and a choice of law provision (New York). It was argued to the court that these were in conflict. The court rejected these arguments and ultimately harmonized the two provisions in accordance with the parties' intent as expressed in the language of the agreement.

Here, the policy language expressly states that California law is to apply to all matters of construction, validity, performance and enforcement "without giving effect to the principles of conflict of law." To accept Claimants' position would be to render this provision a nullity and would contravene the right of the parties to enforce private agreements "according to their terms." (*Id.* p. 52.) And, contrary to Claimants' position, the FAA does not require that a conflicts of laws analysis be conducted where there is a choice of law provision; nor does the law require that a choice of law provision be included in the arbitration provision itself before it is enforceable in the arbitration proceeding. Claimants have not cited any law to the contrary.[1]

---

[1] On the morning of the oral argument, Claimants submitted (without permission) the opinion in *Scarpone v Empire* No C-95-2094 MHP, 1996 WL 231026 (ND Cal. 1996). The Panel declines to consider this authority as having been submitted after the briefing was closed and because Respondent was not given a reasonable opportunity to respond. Nevertheless, the opinion, citing the comment to section 187 of the Restatement, states that, while insurance contracts are examples of adhesion contracts "Choice of law provisions contained in such contracts are usually respected. Nevertheless, the forum will scrutinize such contracts and will refuse to apply any choice of law provision they may contain if to do so would result in substantial injustice to the adherent." The court concluded there would be substantial injustice in that case, not because all insurance policies are contracts of adhesion rendering their choice of law provisions unenforceable, but because of the unique facts of the case (Scarpone's claims arose under both a group policy and a conversion policy with only the conversion policy containing a choice of law provision, and where his "claims are not clearly separable along those lines.").

5

Claimants also contend that the federal court order compelling arbitration is "law of the case" establishing that Florida law governs this arbitration. They rely on the following language of the Judge's order:

> Plaintiff appears to argue that an arbitrable issue does not exist under the arbitration clause because California courts do not recognize third-party bad faith insurance claims. *See* ECF No. [23] at 1. The Court fails to see how that contention bears on this matter. The Complaint asserts a Florida common law third-party bad faith claim against Defendant. Plaintiff cites no authority for the implied proposition that an arbitrator in California cannot hear claims arising under Florida law. Nor does he identify any authority for the related proposition that an arbitrator in California cannot hear claims under another state's law that are not recognized under California law.
>
> ....
>
> The Court further recognizes that other courts have approved arbitrating Florida based insurance disputes in California under this arbitration clause. *See Kong*, 750 F.3d at 1298.
> *Gomez v. Allied Professionals Ins. Co.*, 457 F. Supp. 3d 1351, 1363 (S.D. Fla. 2020)

The law of the case doctrine generally provides that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case. It only acts as a bar when the issue in question was actually considered and decided by the first court. It does not extend to issues the first court did not address. (*U. S. v Cote* (9th Cir. 1995) 51 F.3d 178, 181.)

First, it should be noted that the "first court" here is not an appellate court. Second, the opinion of the Florida federal judge confirmed that an arbitrable issue existed and granted the motion to compel arbitration. No evidence has been presented that the judge was asked to determine whether Florida state law or California state law should govern the arbitration proceeding. The opinion makes no such determination. Accordingly, the federal court order compelling

6

arbitration does not invoke the law of the case doctrine to mandate that Florida law governs these proceedings.

CONCLUSION

The Panel determines that, pursuant to the policy's choice of law provision, this arbitration proceeding shall be governed by the laws of the State of California.[2]

Dated: September 7, 2021

Justice Stephen J. Kane (Ret.)
Arbitrator, Chair

Hon. Christopher Skelly
Arbitrator

Eric Dobberstein
Arbitrator

---

[2] In light of our ruling, the remaining issues raised by the parties are rendered moot (e.g., governmental interest analysis, LRRA).

7

arbitration does not invoke the law of the case doctrine to mandate that Florida law governs these proceedings.

## CONCLUSION

The Panel determines that, pursuant to the policy's choice of law provision, this arbitration proceeding shall be governed by the laws of the State of California.[2]

Dated: _____

_____

ERIE DUBBERSTEIN

_____

---

[2] In light of our ruling, the remaining issues raised by the parties are rendered moot (e.g., governmental interest analysis, LRRA).

7